# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| PATRICIA BUNNER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. CV415-071 |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

Claiming that she is disabled, Patricia Bunner applied to the Social Security Administration (SSA) for Disability Insurance Benefits (DIB). Doc. 5-2 at 21.[1] After the SSA denied her application, she administratively appealed to an Administrative Law Judge (ALJ). He ruled her not disabled. *Id.* at 30. She now seeks judicial review. Doc. 1.

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software at the top of each page. Those do not always line up with each paper document's printed pagination, located at the bottom. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at doc. 5.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies:

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe."[2]

---

[2] An ALJ may dismiss at step two if the alleged impairments do not meet the applicable severity or duration requirements, but claimants are not required to show very much because this step is "designed to screen out only clearly groundless claims," *Hinkley v. Astrue*, 2011 WL 2144624 at * 6 (S.D. Ga. May 31, 2011). It thus knocks

*Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment.[3] *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the [Residual Functional Capacity (RFC)] to perform her past relevant work.[4] *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past

---

out "those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987) (quoting *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)).

[3] Here the claimant:

> needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

*Newsome v. Colvin*, 2014 WL 667800 at * 4 (S.D. Ga. Feb. 20, 2014).

[4] Note the subtle nuances in evidentiary burdens:

> The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do her past relevant work . . . it then becomes the Commissioner's burden -- at the fifth step -- to prove that the plaintiff is capable -- given his age, education, and work history -- of engaging in another kind of substantial gainful employment that exists in the national economy.

*Eaton v. Colvin*, 2016 WL 1337271 at * 11 (S.D. Ala. Apr. 5, 2016).

relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[5] *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination[6] either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (footnotes added).

## II. BACKGROUND

Plaintiff was 50 at her alleged disability onset date, 51 when she applied for DIB, and 53 when the ALJ denied it. Tr. 41, 188. She can

---

[5] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

[6] Again, "[t]he impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511)." *Rumminger*, 2011 WL 6005286 at * 6. Also, "Social Security Rulings 96-2p and 96-Sp indicate that treating physician opinions on issues reserved to the Commissioner of Social Security are never entitled to controlling weight or special significance." *Eaton v. Colvin*, 2016 WL 1337271 at * 10 (S.D. Ala. Apr. 5, 2016).

read and write in English, has an eighth grade education,[7] and has worked as property manager, an office manager, a cashier, bar tender, and a flower arranger. Doc. 51-2 at 42-49; Tr. 42-49, 71, 74, 225, 227. Her claimed ailments: arthritis, degenerative disc disease of the neck and back with spinal stenosis, depression, difficulties sitting and standing, limited neck movement, and "severe pain all day & night." Tr. 226.

At the administrative hearing the ALJ asked Bunner about her daily life activities. She described her propensity for falling (hence, she used a walker to brace herself, though she'd been prescribed a cane, doc. 5-2 at 43-44), as well as her limitations around the house (cleaning, making her own food, sleep pattern interrupted by neck and back pain, etc.). *Id.* at 52-55. The ALJ asked her: "Okay, what would you say your worst problem would be with regard to going back to some form of work?" *Id.* at 56. Bunner cited her need to frequently lie down. *Id.* at 56-57. She left her property manager job, for example, because:

> I kept getting to where it was like I couldn't stand up. I was very emotional. I'm still very emotional about it. I'll like I said, I'll have to be able to lay down and as a property manager you can't lay

---

[7] *But see* Tr. 227 (DIB application wherein she claimed "11th grade," a discrepancy the ALJ would later cite in finding her not credible, doc. 5-1 at 25).

5

down. You have to, it's in and out all day. . . . And then, you know, you're trying to work and it's so painful and you're trying to do [an apartment-rental] application and you're stuck. You can't go anywhere. You have to do it. I just get so emotional. Tears come out on it's [sic] own. I have to excuse myself and go in the bathroom but you come out. They clearly . . . know you've been crying.

Q. Okay, so the real problem is the pains that you have which force you to lie down a lot during the day?

A. Yes, sir.

Q. Okay, how bad is the pain?

A. Severe. I would say, they say it only goes up to 10 but to me, I honestly feel like I'm dying.

Q. Where is it located?

A. It's from the neck all the way down to the feet.

Q. How often do you have it?

A. It's 24 hours a day, even sleeping.

Q. Twenty-four, seven no respite.

A. No rest.

Q. Does anything make it better or worse?

A. No. Even when I was working I was so scared that I was going [to] overdose or something because I take so much medicine, even still I get scared because it's, you know, I don't like to take anything. I don't want to be like this.

Doc. 5-2 at 57-58.

Bunner explained that she takes

medication every day just to walk. Without medication I'm unable to even walk and so if I get to the point after standing for maybe an hour or two or sitting for two, three hours I have to lay down. There's no way around it --

Q. How long --

A. And I'm done, the rest, I cannot do nothing.

Q. So then you wouldn't be able to get back up and do that again?

A. No.

Q. So the break wouldn't help you there?

A. No, no medicine, nothing.

Doc. 5-2 at 59.

Bunner's bottom line: She is in pain, so "I'll just sit, stand, lie down. I can lie down at my leisure. I don't do anything unless I can lie down." *Id.* It hurts even to hold a pen or a popsicle stick. *Id.* at 59-60. After she quit her job in 2011, her doctor conducted a myelogram, she testified, and "he confirmed that [she] had three herniated disks in [her] neck. One of two of them is pushing on the

spinal cord, about 30 percent and [she has] lower back, herniation in the lower back." *Id.* at 61. Her doctor prescribed Lortab. *Id.* Other medications followed (she traces her work-incapability pain issues back to 2006). *Id.* at 61-62. Ultimately her ability to remember basic work tasks also suffered. *Id.* at 63.

Such mental and physical degeneration figures into plaintiff's daily life activities. Bunner testified that she overcooks things and most of the time her husband helps her get dressed. *Id.* at 66. She cannot pull up zippers or a shirt over her head. *Id.* Her husband assists her in taking showers. *Id.* at 67. She says she can lift "like five pounds, maybe. Maybe six, seven." *Id.* at 67-68. But it takes both arms to lift a gallon of milk. *Id.* at 67-68. She also suffers from carpal tunnel syndrome in both hands. *Id.* at 68. She was treated for depression before she stopped working in 2011, *id.* at 69, and has been taking Celexa for it. *Id.* However, she is not seeing any mental health professional. *Id.* at 70. Still, she cries often, and her overall medical condition makes her sad. *Id.*

The ALJ determined that Bunner's evidence failed step three --

she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments. . . ." Doc. 5-2 at 24. He noted medical documentation supporting her on this step, but he also cited other evidence negating that finding. *Id.* Relying on a vocational expert for step four, *id.* at 74-79, the ALJ determined that: Bunner (a) did not meet or exceed the listed impairments; *id.* at 24, (b) possesses the RFC to perform medium work (but "can do no more than occasional balancing, climbing ramps and stairs, stooping, crouching and kneeling" and can never climb ladders or scaffolds or crawl); and (c) could return to her past relevant work (cashier, property manager, etc.). Hence, she is not disabled. *Id.* at 29-30; *see also id.* at 77 (VE: "she would be able to go back to all of [her previous jobs]"). Bunner contends that the ALJ's decision is not supported by substantial evidence because he improperly discredited her testimony and doctors' opinions. Doc. 7. The Commissioner disagrees. Doc. 8.

## III. ANALYSIS

### A. Substantial Evidence

About midway through his painstakingly comprehensive ruling, the ALJ paused to write, in a separate paragraph: "The claimant is not credible." Doc. 5-2 at 25. He acknowledged and applied the SSA regulations' two-step process for assessing RFC[8] to reject Bunner's testimony as simply not believable. He explained, for example, that while Bunner claims she cannot walk more than ten feet at a time and must use a cane, and splints when walking, "[n]onetheless, she has, without fail, presented to every physician since her alleged onset date with no deficits in her gait or station and has not been using a cane or any other assistive device." Doc. 5-2 at 25. Too, her claim to suffer from depression is undermined by her failure to seek any treatment. *Id.* And

---

[8] As has been explained:

> Social Security Regulations require the ALJ follow a two-step process when determining a claimant's functional ability considering her symptoms. 20 C.F.R. § 404.1529. First, the ALJ must consider whether there is a "medically determinable impairment that could reasonably be expected to produce [her] symptoms." *Id.* Second, the ALJ must evaluate the "intensity and persistence of [her] symptoms . . . and determin[e] the extent to which [her] symptoms limit [her] capacity for work. *Id.*

*Hulett v. Colvin*, 2016 WL 393739 at * 7 (N.D. Ala. Feb. 2, 2016).

she told a consultative examiner that she attended school until the Eleventh grade, yet at the hearing she claimed that she'd made it only through the Eighth grade. *Id.* at 25 ("Both statements cannot be true."). She also claimed fatigue as a medication side effect, yet no such claim appears in her medical records. *Id.* at 26. And so on.

The ALJ also found that her medical evidence is not entitled to the weight needed to support her testimonial claims. Doc. 5-2 at 26-30. In fact, he systematically examined and accorded "no weight" to each physician's opinion, including Bunner's treating neurologist, Dr. Louis Horn, who opined that she could not file papers or use a keyboard with her right hand. Doc. 5-2 at 27. Horn, the ALJ pointed out, rendered that opinion *while* Bunner was still in surgical recovery (hence, the incapacity finding likely would not last). Plus he later contradicted himself, and even confused *which* hand required surgery. *Id.* at 28. Finally, Horn proffered a "she's unemployable" conclusion that is rejectable on its face under SSR 96-5p, 1996 WL 374183, since it's a legal conclusion reserved to the Commissioner.

Bunner challenges all of this. No substantial evidence, she insists,

supports the ALJ's evaluation of her credibility and rejection of her medical evidence. And, she additionally contends, the ALJ improperly applied his own lay notions to otherwise evidentially supported medical assertions. Doc. 7 at 3-20. These arguments fail. First:

> As a general rule, "credibility determinations are for the ALJ." *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ discredits subjective testimony, he must explicitly and adequately articulate his reasons. *Id.*

*Clyburn v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 892, 894 (11th Cir. 2014) (quoted in *Johnson v. Colvin*, 2014 WL 1330687 at * 4 n. 6 (S.D. Ga. Mar. 28, 2014)). The *Clyburn* court's analysis provides a useful example of what suffices for a credibility determination that is based on specific, claimant-testimonial points:

> The ALJ specifically and adequately articulated his reasons for the adverse credibility determination in this case, and substantial evidence supports that determination. The ALJ found inconsistencies in Clyburn's testimony. For example, she testified on direct examination that she could not lift a gallon of milk, but when questioned by the ALJ admitted that she could lift her 26-pound baby, "if she has to." She also testified that she was unable to drive after knee surgery but that she was in a car accident one month after the surgery. She stated that was able to drive even though she was not

supposed to be driving, and the ALJ found that her testimony called into question whether Clyburn was ignoring her physicians' advice. The ALJ found that these and other inconsistencies diminished Clyburn's "overall credibility." Although Clyburn attempts to qualify her testimony and rebut the ALJ's interpretation of it, the record establishes that substantial evidence supports the ALJ's credibility determination.

*Clyburn*, 555 F. App'x at 894.

For that matter, each and every testimonial claim need not be spotlighted by the ALJ as believable or not believable. *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (substantial evidence supported ALJ's rejection of claimant's pain testimony; among other things, objective medical evidence did not confirm severity of alleged pain arising from that condition); *Solomon v. Comm'r of Soc. Sec.*, 430 F. App'x 853, 854 (11th Cir. 2011) (substantial evidence authorized ALJ to reject claimant's testimony "that pain and fatigue . . . prevented him from resuming his job as a commercial truck driver," as ALJ could properly find that it was contradicted by claimant's own statements and objective medical evidence), cited in *Hammond v. Astrue*, 2012 WL 930341 at * 6 (S.D. Ga. Mar. 19, 2012). Indeed, both summary and detailed articulations of credibility choices have been sustained on appeal. *See,*

*e.g., Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 440 (11th Cir. 2011)).[9]

Here the ALJ systematically reviewed the underlying medical evidence and highlighted the contrast between what the evidence revealed and what Bunner claimed both testimonially and in her SSA filings.

---

[9] The ALJ is guided by established standards for evaluating medical evidence, too:

> "Social Security regulations require the ALJ to consider many factors when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527(d)." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The more well-explained and well-supported an opinion is, the more weight it receives. 20 C.F.R. § 404.1527(c)(3). And, "the more consistent an opinion is with the record as a whole, the more weight" it garners. *Id.* at (c)(4) (emphasis added).

*Fields v. Colvin*, 2016 WL 347688 at * 5 (S.D. Ga. Jan. 28, 2016). To that end,

> "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D. Ga. Feb. 23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

*Id.* Finally, "State agency consultants are highly qualified specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 416.927(e)(2)(i); SSR 96-6p, 1996 WL 374180." *Jones v. Colvin*, 2016 WL 1162603 at * 8 (N.D. Ala. Mar. 23, 2016).

Bunner underscores the sheer number of medical opinions that the ALJ rejected. Doc. 7 at 14 ("Rejection of six treating sources contrary to the ALJ's RFC finding").  Yet, the ALJ scrupulously detailed his reason for assigning no weight to them, doc. 5-2 at 26-30, and she has not illuminated reversible error.  For example, he specifically referenced the imaging studies performed on Bunner, and the fact that they revealed "degenerative disc and degenerative joint disease causing neuroforaminal narrowing at [veterbral joints] C3-C4, C5-C7, and C6-C7[, plus] narrowing of the spinal canal, crowding of the nerve roots, and foraminal encroachment at L4-L5."  Doc. 5-1 at 26.  But other record evidence, including physical examinations performed by plaintiff's "treating neurologist and treating general practitioner both contain no abnormal findings consistent with radiculopathy or significant limitations secondary to the claimant's back conditions."  *Id.*[10]

---

[10]  Bunner similarly challenges other findings like this at the margins. For example, she underscores her own testimony that she cannot walk without the assistance of a cane -- because she falls a lot.  Doc. 7 at 5-6.  She then insists that "[t]his fact is confirmed by her treating physician, who explicitly stated that [her] 'legs give out on her.' Tr. 634."  Doc. 7 at 6.  But just because her statements have been repeated by other sources, including doctors, does not constrain a finding that she is that (*i.e.*, cane-level ambulation) incapacitated.

Note that it was not necessary for the ALJ to expressly write "claimant said this, but that's not true because X, Y & Z." It is sufficient that he identified Bunner's testimonial claims, state (which he did) that he disbelieved them, then show -- by citing to substantial evidence -- *why* he disbelieved them.[11] That is what he did here. Bunner's complaints

---

As the Commissioner points out, doc. 8 at 5, there must be medical findings -- documentation -- "establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." Bunner did say that her cane was medically prescribed, doc. 5-2 at 45, but a plethora of medical treatment notes, dated between March 2010 and June 2013, and authored by both examining and treating sources, noted that she enjoyed normal gait and station. Tr. 271 ("normal"), 454 ("Normal Posture. Gait"), 496 ("Gait And Stance: Normal"; "Balance: Normal"), 503 ("Gait And Stance: Normal"), 512 ("Gait And Stance: Normal"; "Balance: Normal"), 527 (same), 532 (same), 550 ("Gait is normal and full weight-bearing, and heels and on tip toes-knife and to my surprise"); *id.* ("Gait is normal full weight-bearing in clinic hall way"), 567 ("Balance: Normal"; "Gait And Stance: Normal"), 581 (same), 591 (same), 605 ("Gait And Stance: Normal"), 670 ("Gain and Station: Gait: stable; Station: able to stand without difficulty, Romberg's sign absent"), 682 ("Gait And Stance: Normal"), 687 ("Gait And Stance: Normal"). A December 2010 treatment note shows that Plaintiff complained of losing her balance and falling, yet she had normal gait and station, and she "surprise[d]" her physician by having normal full weight bearing and having no problem heel or toe walking. Tr. 550. Neurologist Stephen Pappas examined Plaintiff in June 2013 and again she had normal gait, station, and neurological functioning. Tr. 687. Pappas concluded that Bunner did not require the use of a cane to ambulate. Tr. 694.

Under the above-illuminated governing standards, that medical evidence is sufficient to support the ALJ's ruling. The remainder of Bunner's contentions ride the same rails.

[11] *See also Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807-08 (11th Cir. 2014) (ALJ's determination, in applying "pain standard" to symptoms of claimant, who suffered from polymyositis, that claimant was not credible, was supported by substantial evidence; despite claiming that his generalized pain sometimes prevented

simply invite this Court to reweigh the evidence -- something it cannot do.

## III. CONCLUSION

It remains the ALJ's province to determine a claimant's credibility so long as he explains his credibility determination. *Holt v. Sullivan*, 921 F.2d 1221, 1223-24 (11th Cir. 1991). He has highlighted contradictions in Bunner's statements and the record, which a reasonable person, *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), could conclude supports finding her not credible. He sufficiently explained his reasoning and the record supports it. That's all that the Commissioner need show here. *See, e.g., Marley v. Comm'r of Soc. Sec.*, 2015 WL 847376 at * 7 (M.D. Fla. Feb. 26, 2015) ("The ALJ therefore sufficiently explained his reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence nor will the Court disturb a clearly articulated credibility finding that is supported by substantial evidence.").

---

him from standing and that it was usually a four or five on a ten-point scale, he did not take any pain medication and was able to manage the pain, and medical records did not support his claims that he could only work a few hours a week and lift less than a half-gallon of milk; nor did they support his allegations of debilitating pain or exhaustion following only 30 minutes of sitting); *Dyer*, 395 F.3d at 1210-11 (affirming ALJ's adverse credibility finding where doctors noted and plaintiff reported that condition improved with treatment).

The ALJ's conclusion that plaintiff Patricia Bunner is not disabled therefore should be affirmed and this case **DISMISSED WITH PREJUDICE**. Meanwhile, the Court **GRANTS** the Commissioner's motion to substitute counsel: Shannon H. Statkus shall be substituted for Daniel R. Crumby, as attorney of record for the Commissioner. Doc. 9.

**SO REPORTED AND RECOMMENDED**, this __25th__ day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA